Filed 8/18/16  P. v. Fields CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CARLTON DWAYNE FIELDS,<br><br>    Defendant and Appellant. | F071381<br><br>(Fresno Super. Ct. No. F11903982)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Kenneth N. Sokoler and Sean M. McCoy, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P.J., Detjen, J. and Franson, J.

Defendant and appellant Carlton Dwayne Fields appears before us for the second time as the result of a plea agreement into which he entered in 2012. In his original appeal, we affirmed the convictions but remanded the matter for resentencing. This appeal is from the new sentence imposed. Fields argues that trial court erred when it failed to obtain a supplemental probation report prior to sentencing him, erred in its calculation of the presentence custody credit to which he was entitled, and violated his right to be free from double jeopardy when it imposed fines in excess of those imposed at the original sentencing hearing.

We conclude Fields did not suffer any prejudice as a result of the court's denial of his request for a supplemental probation report. We agree with Fields that the trial court miscalculated his presentence custody credits, and the record must be corrected as to the imposition of fines. We will remand the matter to the trial court to correct these two errors.

## FACTUAL AND PROCEDURAL SUMMARY[1]

### Case No. F09905868

On October 12, 2009, Fresno police officers observed Fields and another man as they appeared to be handing something back and forth to each other. The officers contacted Fields and found .08 grams of cocaine base on him.

In 2009, Fields pled no contest to possession of cocaine base for sale (Health & Saf. Code, § 11350, subd. (a)) in Fresno County Superior Court case number F09905868, admitted he had served a prior prison term (Pen. Code § 667.5)[2] and admitted he had suffered a prior conviction within the meaning of the "Three Strikes" law (§ 667,

---

[1] The factual and procedural history is from this court's nonpublished opinion in *People v. Fields* (Dec. 10, 2014, F066617).

[2] All further undesignated statutory references are to the Penal Code unless otherwise stated.

2.

subds. (b)–(i)).  Fields was sentenced to a four-year prison term.  The sentence was suspended, and Fields was placed on probation.

**Case No. F11903982**

In May through July 2011, Jane Doe lived on and off with Fields in an apartment in Fresno.  On the evening of July 2, 2012, she and Fields argued because Fields believed she had been unfaithful to him.  During the argument, Fields repeatedly threatened to kill her as he paced back and forth from the living room to the kitchen holding a cake knife.  At one point, Fields touched Doe on the stomach with the knife.  Eventually, Doe left the apartment and Fields followed her outside where they continued arguing.  Fields then lifted Doe off the ground and slammed her on the ground.  Afterwards, Doe walked back to the apartment to get her belongings to leave but wound up staying there.

The following morning Fields and Doe continued arguing and Fields punched Doe in her right eye, which caused her eye to go blind.  Fields also grabbed Doe by the neck and slapped her on the face.  Prior to these incidents, Fields had assaulted Doe on four or five other separate occasions.

On July 3, 2011, Fresno Police Officer Leonard Turk arrested Fields and transported him to the Fresno County Jail.  While Turk used a computer in the patrol car to type out an arrest report, Fields kept asking for water.  Turk told Fields to calm down and he would get Fields some water as soon as they entered the jail.  Fields told the officer that if he did not get him some water, he was going to kick the patrol car's window out.  He then began kicking a rear window on the patrol car, damaging it.

**The Psychological Evaluations**

Shortly after Fields was taken into custody in this case, a question arose regarding his mental competence to stand trial.  The court suspended criminal proceedings and appointed several experts to examine Fields.  One expert found he was mentally incompetent.  Another expert saw no evidence of any thought disorders but some

3.

evidence that he was feigning mental illness. A third expert concluded Fields had feigned psychotic symptoms.

On October 24, 2011, the court found Fields competent and reinstated criminal proceedings.

On February 23, 2012, another question arose regarding Fields's competence, and the court again suspended criminal proceedings and appointed experts to examine him.

One expert found he was malingering psychotic and manic symptoms. The other two experts found Fields was not competent and had hallucinations consistent with cocaine dependency.

On April 26, 2012, the court found Fields was not competent to stand trial. The court committed him to Atascadero State Hospital.

On September 12, 2012, the treating experts at the hospital reported Fields was malingering and feigning mental illness symptoms, and he was competent to stand trial.

On September 19, 2012, the court found Fields was competent and reinstated criminal proceedings.

**Pleas**

On December 12, 2013, Fields pled no contest to an amended information in case No. F11903982: (1) inflicting corporal injury on a cohabitant with a prior conviction (§ 273.5, subd. (e)(1)), (2) mayhem (§ 203), (3) battery with serious bodily injury (§ 243, subd. (d)), (4) assault with a deadly weapon (245, subd. (a)(1)), (5) criminal threats (§ 422), and (6) misdemeanor vandalism (§ 594, subd. (a)(2)) in Fresno County Superior case number F11903982.

He also admitted a great bodily injury enhancement (§ 12022.7, subd. (e)), a prior serious felony conviction enhancement (§ 667, subd. (a)), a prior prison term enhancement (§ 667.5, subd. (b)), and that he had suffered a prior conviction that constituted a strike within the meaning of the Three Strikes law (§ 667, subds. (b)–(i)).

## Sentencing

Fields filed a sentencing memorandum and argued the court should dismiss the prior strike conviction because his criminal acts resulted from substance abuse, two experts diagnosed him with a mental condition, and he never received treatment for his psychiatric problems.

On January 29, 2013, Judge Harrell conducted the sentencing hearing. The court granted Fields's request to take judicial notice of the prior psychological evaluations. Fields asked the court to dismiss the prior strike conviction or place him on probation because he suffered from a mental or psychotic disorder, which minimized his culpability for the current offenses. The court denied the request.

The trial court sentenced Fields to a term of 18 years in prison in case No. F11903982. Based on this conviction, the trial court also found Fields had violated probation in Fresno County Superior case No. F09905868, lifted the stay on the previously imposed sentence, and imposed a consecutive one-year sentence thus making Fields's total sentence 19 years in prison.

## Appellate Opinion

On October 2, 2014, this court filed an unpublished opinion in Fields's appeal from his convictions and sentence in case Nos. F11903982 and F09905868. We rejected his argument that the court abused its discretion when it denied his request to dismiss the prior strike conviction or place him on probation:

> "Fields's probation report indicates that Fields had a dismal criminal record that began in 1996 when he was convicted of exhibiting a deadly weapon other than a firearm. In 2000 he was convicted of being drunk in public and resisting arrest, in 2001 of battery on a spouse, in 2005 of assault with a deadly weapon and child abuse, in 2008 of battery on a cohabitant, and in 2009 of possession of a controlled substance.
>
> "Additionally, he served a prison term on his assault conviction, violated his parole for that offense once, and committed his most recent offenses while on probation for possession of cocaine base. Further, his

assault and child endangerment offenses involved Fields chasing and ramming his car into one driven by his ex-girlfriend with her male friend and two children ages one and three inside as both cars traveled at a high rate of speed. The chase ended when Fields clipped the rear of his ex-girlfriend's car while traveling approximately 85 miles an hour causing her car to spin two times and flip three times. The court could reasonably conclude from Fields's prior record, which appeared to be escalating in violence, and the circumstances of his brutal attack on victim Doe that left her blind in one eye, that Fields should not be deemed to be outside the spirit of the three strikes law.

"Moreover, there is no merit to Fields's contention that he was suffering from drug psychosis syndrome and that the court failed to give full weight to this factor. In ruling on Fields's *Romero* motion, the court considered numerous reports of psychological evaluations that were performed on Fields. *The court's conclusion that Fields was malingering his mental symptoms was supported by several of these reports and by Fields's admission at his sentencing hearing that he did not have any 'substantial mental health problem.'* Additionally, Fields did not claim he was suffering from any type of psychosis or other mental illness when he committed any of his offenses that involved violence. Accordingly, we conclude the court did not abuse its discretion when it denied Fields's *Romero* motion." (Italics added.)

This court also rejected Fields's argument that his defense counsel was prejudicially ineffective for failing to investigate his purported psychotic condition, because the expert reports had concluded he was feigning psychotic symptoms.

However, we concluded the trial court erred when it imposed sentence and failed to comply with section 654. The trial court correctly determined the sentence on several of the counts to which Fields pled must be stayed pursuant to section 654 because they arose out of the same course of conduct. However, the trial court failed to impose sentence on the count that would result in the longest potential term of imprisonment. The trial court erroneously determined the length of the sentence for the possession of cocaine base for sale count once it concluded Fields violated his probation. The trial court also failed to impose sentence on the misdemeanor vandalism count, and the award

6.

of custody credits was incorrect. We remanded the matter to the trial court for resentencing.

**Resentencing Hearing**

When the matter was remanded, the court granted Fields' motion to continue the matter so that Judge Harrell could conduct the resentencing hearing.

On March 24, 2015, Judge Harrell convened the resentencing hearing and stated the matter had been remanded to correct Fields' sentence so it would comply with section 654, and recalculate his presentence custody credits.

Fields appeared with counsel, who advised the court that Fields wanted to know if he could represent himself, and whether the matter should be continued because he had filed a petition for review with the California Supreme Court.

The trial court explained to Fields he would have to fill out a questionnaire regarding self-representation, and he would have to be ready to proceed that day. It also explained the resentencing hearing was going to occur on that date regardless of his petition for review, and that the issue before the court was limited to addressing the sentencing errors identified in Fields's appeal from his conviction.

Fields said that since the court had made an error under section 654, it could "address other issues that I have that I may want to bring up before the Court," such as "my behavior since the last time I have been sentenced in this courtroom."

The trial court disagreed. "I would disagree, sir. I would disagree. I have no information concerning your behavior. And the bottom line, the Court is to sentence and address, as the Court of Appeal directed this Court, to a term that complies with section 654."

The court asked Fields if he wanted to represent himself. Fields said no.

The court stated that the original sentence was based on Fields's criminal history and his conduct in this case. It intended to correct Fields's sentence but it would not otherwise impose a lesser term.

7.

Defense counsel advised the court that Fields wanted "all rights he had at the previous sentencing hearing," including "a probation report, a psychological evaluation, and appointment of experts for new psychological evaluations." Fields also wanted to withdraw his plea because of his alleged mental condition. The prosecutor objected to these requests, and argued there was no basis to withdraw his plea.

The trial court denied Fields's requests. "First concerning the request for a resentencing report, or a new probation report, the Court does not see the need for that. The Court of Appeal made it very clear in their opinion the issues that this Court must address. They even address the issue of presentencing credits that the probation report neglected to bring to the Court or counsel's attention. The probation picked up on that – or excuse me, the Court of Appeal picked up on that and addressed that issue and allowed the Court to address the issue here. So the Court sees no need for a new sentencing report."

The court also found Fields was previously evaluated by experts during the competency proceedings, it had considered those reports, and he was not entitled to a new psychological evaluation. The court found a motion to withdraw his plea was untimely.

Defense counsel asked the court to impose the lower or middle terms for the convictions, and argued any doubt about factual discrepancies regarding the charged offenses "should go to [Fields] as far as whether this was a violent case or not," because it "was not a substantially violent case."

The court replied that it previously selected the aggravated term for mayhem. It had discretion to impose a lesser term, but it was not inclined to do so. It rejected defense counsel's argument about inconsistencies regarding the underlying facts. "The mayhem was substantial. This woman either almost did or did lose her eye. I don't know the ultimate outcome of her medical condition, but clearly, that was serious…." The court was aware of the sentencing error, and it was also aware of its discretion on remand.

8.

However, it was not going to exercise that discretion: "And I'm sorry, putting someone's eye out or almost putting someone's eye out is exactly what [Fields] did in this case."

Defense counsel advised the court that Fields wanted to make a statement, and present statements from friends and relatives. The court granted the request.

Antoinette Brookins, Fields's sister, said she was a licensed marriage and family therapist and worked with juvenile inmates. Brookins believed Fields had mental health issues for a long time, and, to some extent, these problems triggered his criminal acts. She asked that he receive help for these problems while he was in prison.

Pastor Betty Jackson said her ministry worked with inmates while they were in prison and helped them after their release. She had become Fields's "pen pal" after he went to prison, and she appeared at the resentencing hearing without Fields asking her to. Jackson said: "I know that he has remorse to some point in what he has done. I have been working with him on that. I work with him on the spiritual aspect." Jackson had talked to Fields's mother, and knew that his family wanted to get him into a mental health program. Jackson said: "I don't think that he is at that point, but … I think you need to consider that." Jackson said there were "some issues that need to be addressed" to help him, and she would continue to work with him.

Ruby Fields, his mother, said Fields had drug and mental health issues for some time. Mrs. Fields said since he had been in prison, he was "doing really well" and going to school. She believed that "he has brought about a change in his life. He [has] shown remorse to what he has done," and said he could not remember some of his acts because they were induced by drugs. Mrs. Fields asked the court for leniency.

Fields also addressed the court and apologized for the injuries he caused to the victim. Fields said he had been trying to obtain help so he could make the necessary changes in his life.

9.

### *The court's findings and orders*

The court said it had reviewed the original probation report, and read the appellate opinion. The court also took into consideration the numerous psychological evaluations prepared prior to his plea.

The court believed that no one spoke on Fields' behalf at the first sentencing hearing. It acknowledged Fields now had a strong support system but further stated: "The difficult concept for the Court to deal with is that it seems other people suffer as a result of his issues, not once, not even twice, but several times, based upon the criminal history."

The court understood it had discretion to select a term other than the aggravated term, but selected the aggravated term because of Fields's criminal history and the viciousness of the crime. The court reaffirmed the findings it made at the original sentencing hearing about the seriousness of Fields's offenses. The court declined to impose lesser terms "and run the risk of having someone else being hurt as significantly as the victim in this case." The court noted that Fields had been given an opportunity when he was previously placed on probation and parole, but that "did not bear any fruit whatsoever," and when this case occurred, he "did or nearly did put a woman's eye out."

The court imposed the aggravated term of eight years for the mayhem count, doubled because of the strike prior, for a term of 16 years for the principal term in case number F11903982. The term of imprisonment on the remaining felony counts was stayed pursuant to section 654. Fields was sentenced to time served for the misdemeanor vandalism count. The trial court also imposed a five-year term for the prior serious felony conviction but stayed the prior prison term enhancement. The total term imposed was 21 years in prison.

In case No. F09905868 the trial court reduced the conviction to a misdemeanor pursuant to Proposition 47 and sentenced Fields to time served.

This appeal is from the proceedings that occurred at the resentencing hearing.

10.

## DISCUSSION

### I.    Supplemental Probation Report

Fields argues the court abused its discretion when it rejected his request for preparation of a supplemental probation report at the resentencing hearing.  Fields concedes he was not eligible for probation, but argues that since the court ordered a probation report before the first sentencing hearing, it was required to order an updated report pursuant to California Rules of Court, rule 4.411(c)[3] because a significant period of time passed between the initial report from January 2013 and his resentencing hearing in March 2015.

#### A.  Section 1203 and Rule 4.411

Section 1203 requires the trial court to refer the matter to the probation department for an investigation about the circumstances surrounding the crime and the prior history and record of the defendant if the defendant is eligible for probation.  (§ 1203, subd. (b).)

If the defendant is not eligible for probation, a referral to the probation department is required for an investigation of the facts relevant to the amount of restitution in cases where restitution is an issue.  (§ 1203, subd. (g).)

In all other cases where the defendant is not eligible for probation, the trial court has discretion to refer the matter to the probation department "to investigate all facts relevant to the sentencing of the person.  Upon that referral, the probation officer shall immediately investigate the circumstances surrounding the crime and the prior record and history of the person and make a written report to the court of his or her findings." (§ 1203, subd. (g).)

Consistent with section 1203, subdivision (a), rule 4.411(a) states the trial court "must" obtain a probation report if the defendant is eligible for probation.  Rule 4.411(b)

---

[3] All references to rules are to the California Rules of Court.

states the trial court "should" obtain a probation report if the defendant is not eligible for probation.

Fields relies on rule 4.411(c) which states: "The court must order a supplemental probation officer's report in preparation for sentencing proceedings that occur *a significant period of time* after the original report was prepared." (Rule 4.411(c); italics added.)

The advisory committee comment to rule 4.411(c) "is based on case law that generally requires a supplemental report if the defendant is to be resentenced a significant time after the original sentencing, as, for example, *after a remand by an appellate court*, or after the apprehension of a defendant who failed to appear at sentencing. The rule is not intended to expand on the requirements of those cases. [¶] The rule does not require a new investigation and report if a recent report is available and can be incorporated by reference and there is no indication of changed circumstances. This is particularly true if a report is needed only for the Department of Corrections and Rehabilitation because the defendant has waived a report and agreed to a prison sentence. If a full report was prepared in another case in the same or another jurisdiction within the preceeding [*sic* ] six months, during which time the defendant was in custody, and that report is available to the Department of Corrections and Rehabilitation, it is unlikely that a new investigation is needed." (Advisory Com. com., foll. rule 4.411, italics added; *People v. Dobbins* (2005) 127 Cal.App.4th 176, 181 (*Dobbins*).)

Where a defendant is statutorily ineligible for probation because of a prior strike conviction, a probation report is discretionary and not mandatory, and rule 4.411(c) "does not compel a different result." (*People v. Llamas* (1998) 67 Cal.App.4th 35, 39 (*Llamas*); *People v. Franco* (2014) 232 Cal.App.4th 831, 834 (*Franco*).) The "only reasonable interpretation" of rule 4.411(c), "reading in light of rule 4.411(a) and (b), is that a supplemental report is required only if the defendant is eligible for probation." (*Llamas, supra*, 67 Cal.App.4th at pp. 39–40; *Franco, supra*, 232 Cal.App.4th at p. 834, fn. 21.)

12.

In *Llamas, supra*, 67 Cal.App.4th 35, the defendant was convicted of drug and firearm offenses and sentenced to a second strike term. His first appeal was partially successful and the matter was remanded for a new sentencing hearing. At the resentencing hearing, the defendant submitted documents in support of statement of mitigation about his positive conduct in prison, and the defendant addressed the court about his efforts. Defense counsel did not request a supplemental probation report because he believed defendant was not entitled to one. The court denied the defendant's motion to dismiss his strike. In his second appeal, the defendant argued the court erred when it resentenced him without obtaining a supplemental probation report, because it would have showed his positive conduct in prison, and his counsel was ineffective for failing to request the report. (*Id*. at pp. 37–38.)

*Llamas* held that even if the defendant had preserved an objection, he was statutorily ineligible for probation because of his prior strike conviction and a supplemental probation report was discretionary. *Llamas* further held the defendant did not show the court abused its discretion in failing to order a supplemental report, or that any prejudice resulted. The defendant had submitted documents about his educational efforts in prison, and the court was advised about his studies and positive efforts. "Thus, the information [the defendant] asserts was missing due to the lack of a supplemental report was available to the resentencing court in other forms." (*Llamas, supra*, 67 Cal.App.4th at p. 40.) "A probation report is advisory only. [Citation.] Nothing would have been added to [the defendant's] efforts to persuade the court to dismiss his strike and make more lenient sentencing choices had a supplemental report reiterated information conveyed by other sources …." (*Id*. at pp. 40–41.)

In *Dobbins, supra,* 127 Cal.App.4th 176, the defendant pleaded no contest to drug charges. A probation report was prepared in July 2003, which summarized his prior record, and he was placed on probation. In September 2003, the defendant was arrested and charged with new offenses. In October 2003, the defendant's probation officer

13.

prepared a Proposition 36 progress report that he violated terms of his probation. At the defendant's trial on the new offenses, the jury deadlocked and a mistrial was declared. In March 2004, the court found he violated probation because he failed a drug test and committed new offenses based on a preponderance of the evidence, and imposed the previously suspended prison term. On appeal, the defendant argued the court should have ordered and considered an updated probation report. (*Id*. at pp. 178–179.)

*Dobbins* explained that a probation report is "not necessarily required if defendant is statutorily ineligible for probation, for example, because of a prior strike. [Citations.]" (*Dobbins, supra*, 127 Cal.App.4th at p. 180.) *Dobbins* held the court should have ordered an updated report pursuant to rule 4.411(c) because "the original probation report was prepared approximately eight months before the sentencing hearing. This period was well in excess of the six months referred to by the Advisory Committee, and it included approximately two months *when defendant was not under the watchful eyes of custodial authorities but was rather released on probation*, when he committed the conduct for which his probation was revoked." (*Dobbins*, *supra*, at p. 181, italics added.) However, the court also held: "Our decision is necessarily predicated on the facts of this case, and we have no occasion to decide whether a supplemental or updated probation report might be warranted if less time had passed and/*or defendant had not been released on probation*." (*Id.* at p. 181, fn. 3, italics added.)

*Dobbins* concluded there was no federal constitutional right to a supplemental probation report. The court's error only implicated California law, and the error was not prejudicial under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). "Considering the peculiar facts of this case, there is no doubt the result would have been the same if a supplemental probation report had been prepared." (*Dobbins, supra*, 127 Cal.App.4th at p. 183.)

> "The original probation report apprised the trial court of defendant's background and other relevant information. *And his record was such*

14.

*(including as it did numerous parole violations and periods of incarceration) that there was little justification for a further grant of probation.* Moreover, the trial court was aware from the Proposition 36 status report and from the trial that defendant's conduct while on probation had been poor. The judge who sentenced defendant was the same judge who presided over the trial and was thus intimately acquainted with the facts underlying his violation of probation, which involved use of a weapon. Considering these circumstances, there is no reason to believe that additional information would have led to reinstatement of probation." (*Id.* at p. 183, italics added.)

In *Franco, supra*, 232 Cal.App.4th 831, this court addressed the defendant's argument that a supplemental probation report should have been prepared before the superior court denied his petition for recall of his third strike sentence under the Three Strikes Reform Act of 2012. (*Franco*, *supra*, at p. 832.) We held that the defendant did not request a supplemental probation report or object to proceeding without one. He thus forfeited review of the issue since he was ineligible for probation, even though "the issue before the sentencing court was whether to exercise discretion" to dismiss a prior strike conviction under section 1385. (*Id.* at p. 834.)

*Franco* also addressed the "merits," and held the trial court did not have "a duty to obtain a supplemental probation report. Referral of the matter to the probation officer for investigation and report is mandatory when a defendant convicted of a felony is eligible for probation [citations], but discretionary when the defendant is ineligible for probation, except where the amount of restitution must be determined [citation]." (*Franco, supra*, 232 Cal.App.4th at p. 832, fns. omitted.) *Franco* declined to impose a mandatory duty on the superior court to order a supplemental probation report in such hearings "where the statutes and rules of court granting authority for probation reports do not so provide." (*Id.* at p. 835.)

*Franco* rejected the defendant's argument that the court's failure to request a supplemental report constituted a prejudicial abuse of discretion under *Watson*, and concluded the defendant failed to show it was "reasonably probable the court would have

15.

resentenced defendant had it 'reviewed a probation report objectively providing a thorough assessment [defendant], including overview of his 15 years in prison.' [Citations.]" (*Franco, supra*, 232 Cal.App.4th at p. 835.)

### B. Analysis

Fields was statutorily ineligible for probation because of his prior strike conviction. The court was not mandated to order a supplemental probation report for the resentencing hearing.

At the resentencing hearing, Fields asked for a new probation report to address his conduct in prison, along with another psychiatric evaluation and appointment of additional experts. Fields also asked the court to impose lesser or middle terms for his convictions. Fields was being resentenced by the same judge who conducted the original sentencing hearing. Indeed, Fields had moved for a continuance in order for that judge to preside at the resentencing hearing. As a result, the court was well aware of Fields's criminal history, the facts of the underlying convictions, and his efforts to feign mental illness in this case.

Given Fields's history of feigning mental illness, and his failure to make any offer of proof of different circumstances, the court did not abuse its discretion when it denied his request for another psychiatric evaluation.

When the court denied Fields's request for a supplemental report about his conduct in prison, it said it was not inclined to impose lesser terms because of Fields's prior record and the violence of the underlying offenses, and his conduct in prison was not relevant. As the hearing continued, however, the court granted Fields's request to have his pastor and family speak on his behalf.

We find that even if the court should have granted Fields's request for a supplemental probation report, the error was not prejudicial under *Watson*. In contrast to *Dobbins*, Fields had been incarcerated for the entire time between the first and second sentencing hearings, and the original probation report summarized his prior record. More

importantly, as in *Llamas*, the court ultimately heard and considered information about Fields's conduct in prison through the statements of his pastor and family, and Fields's own statement to the court – that he was remorseful for his actions, and he was trying to improve his life and situation. Neither Fields nor his defense attorney made an offer of proof about any other information regarding his conduct in prison, aside from the statements from his pastor and relatives, and his own statement to the court.

While the court considered this information, it expressly declined to exercise its discretion to impose lesser terms based on the facts and circumstances of the underlying convictions, and rejected Fields's argument that the crimes did not involve violence. The trial court understood it had discretion to select a term other than the aggravated term, but selected the aggravated term because of Fields's criminal history and the viciousness of the crime. It confirmed that it believed the findings it made at the original sentencing hearing were correct, and affirmed it was relying on those findings when once again choosing the aggravated term.

The trial court had before it all of the information necessary to make an informed decision about the appropriate sentence for Fields, and understood it had discretion to choose a term other than the aggravated term. A supplemental probation report would have added little to the proceedings. The trial court's statements at the resentencing hearing make it clear that it believed the appropriate sentence in this case was the aggravated term. We conclude, therefore, that there is not a reasonable possibility, let alone a reasonable probability, that Fields suffered any prejudice as a result of the trial court's decision to forgo a supplemental probation report.

## II.  Presentence Custody Credits

The second issue identified by Fields was the failure of the trial court to calculate his presentence custody credits. The trial court only awarded Fields custody credits for the time he spent in prison before the original sentencing hearing. Fields argues, and the

People concede, the trial court erred because it was required to include in his custody credit calculation the time he spent in prison after the original sentencing hearing.

Both parties agree this issue was resolved by *People v. Buckhalter* (2001) 26 Cal.4th 20, which held: "When, as here, an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the *actual time* the defendant has already served and credit that time against the 'subsequent sentence.' (§ 2900.1.) On the other hand, a convicted felon once sentenced, committed, and delivered to prison is not restored to presentence status, for purposes of the sentence-credit statutes, by virtue of a limited appellate remand for correction of sentencing errors. Instead, he remains 'imprisoned' (§ 2901) in the custody of the Director 'until duly released according to law' (*ibid.*), even while temporarily confined away from prison to permit his appearance in the remand proceedings. Thus, he cannot earn good behavior credits under the formula specifically applicable to persons detained in a local facility, or under equivalent circumstances elsewhere, 'prior to the imposition of sentence' for a felony. (§ 4019, subds. (a)(4), (b), (c), (e), (f) ….) Instead, any credits beyond *actual custody time* may be earned, if at all, only under the so-called worktime system separately applicable to convicted felons serving their sentences in prison. (§§ 2930 et seq., 2933.)" (*Id*. at p. 23, original italics.) We remand the matter to the trial court to recalculate the presentence custody credits to which Fields is entitled.

## III. Restitution Fine

At the resentencing hearing, as part of the pronouncement of judgment, the trial court imposed a restitution fine in the amount of $6,300 (§ 1202.4, subd. (b)), and a parole revocation restitution fine in the same amount (§ 1202.45, subd. (a)). The parties agree that at the original sentencing hearing, these fines were set in the amount of $5,320. The minute order from the resentencing hearing indicates, "All fines and fees previously imposed due." Consistent with the minute order, the abstract of judgment states the amount imposed for these fines was $5,320. The parties also agree that if we reach the

18.

merits of the issue, the difference in the fines violates Fields's right to be free from double jeopardy under the California Constitution.

When there are inconsistencies in the record, it is the oral pronouncement of judgment that is controlling, so for the purposes of our analysis, we will disregard the notations in the minute order and the abstract of judgment which differ from the oral pronouncement of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185–186; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) Discrepancies between the oral pronouncement of judgment and the minute order or abstract of judgment are presumably the result of clerical error.[4] (*People v. Mesa* (1975) 14 Cal.3d 466, 471.)

Since at the resentencing hearing the trial court imposed fines in excess of the those imposed at the original sentencing hearing, Fields right to be free from double jeopardy under the California Constitution was violated. (*People v. Hanson* (2000) 23 Cal.4th 355, 358, 361–367; *People v. Daniels* (2012) 208 Cal.App.4th 29, 31–32.)

The Attorney General asks us to avoid the merits of this error by finding Fields has forfeited the argument because he failed to object in the trial court. (*People v. Scott* (1997) 15 Cal.4th 1188, 1201.) Fields counters that if the argument was forfeited, then he received ineffective assistance of counsel. For this reason, we choose to address the merits of the argument, and will order the trial court to correct the error since remand is necessary to correct the time credit error identified above.

## DISPOSITION

The matter is remanded to the trial court to allow it to determine the amount of custody credits to which Fields is entitled as a result of the time he spent in prison between the original sentencing hearing and the resentencing hearing, and to allow the

---

[4] Because the oral pronouncement of judgment is controlling, we reject the Attorney General's argument that the issue is moot because the abstract of judgment and the minute order imposed show the trial court imposed fines in the amount of $5,320.

19.

trial court to impose restitution fines that do not violate Fields right to be free from double jeopardy.  In all other respects the judgment is affirmed.